**George M. ROMERO, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2921.**

Court of Appeals of Alaska.

Jan. 26, 1990.

S. Joshua Berger, Fairbanks, for appellant.

Jeffrey A. O'Bryant, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, Judges.

COATS, Judge.

George M. Romero was convicted after a jury trial of two counts of wanton waste of a big game animal. AS 16.30.010. Romero appeals his conviction, arguing that the tri-

al judge erred in the manner in which he participated in Romero's cross-examination. We reverse.

Romero was charged as an accomplice, for failing to salvage the meat of two moose shot by two hunters for whom Romero was acting as a guide. Romero represented himself at trial with an attorney as "advisory counsel." Romero testified on his own behalf at trial. He testified that he had salvaged some of the meat while he was out with the two hunters, and that after flying the hunters out he had been prevented by bad weather from returning to the kill sites to salvage the rest of the meat.

Romero also suggested in his testimony that the state was prosecuting him in retribution for his successful appeal of the denial of his application for a registered guide license in 1987. He testified that throughout the fall of 1987 there had been many complaints filed against him by his clients, all of them instigated by State Fish and Game officers "trying to agitate these hunters." He claimed that prior to 1987 there had never been any kind of complaint against him. District Court Judge Herschel E. Crutchfield ruled that by testifying that there had never been a complaint against him before 1987, Romero had "opened the door" to the introduction of evidence that a complaint had been made against him in 1983.

In 1983, Romero was charged with and convicted of two counts of unlawfully taking big game while acting as a guide. Judge Crutchfield, the trial judge in the present case, also presided over Romero's 1983 trial. We reversed Romero's conviction in *Romero v. State*, Memorandum Opinion and Judgment No. 758 (Alaska App., January 16, 1985). We held that the regulation under which Romero had been charged was unconstitutionally vague unless narrowly construed to include only activities which clearly involved guiding. We remanded the case, ordering, "If Romero is retried, he should be retried under our narrow definition of 'acting as a guide.'" *Id.* at 9.

Judge Crutchfield's ruling did not allow the prosecutor to refer specifically to Romero's 1983 conviction; the prosecutor was allowed only to ask Romero whether a complaint was made against him in 1983.[1] However, before the prosecutor had a chance to ask him about the 1983 complaint, Romero volunteered the information that another guide had made a complaint against him in 1983, and that the court of appeals had reversed the decision in that case. The prosecutor then asked, "You remembered the 1983 case because you knew I was just going to ask you about that other complaint that was made about your activities as a guide, right?" Romero, after explaining that it had not been his clients who had registered the complaint in that case, said "they charged me with a charge and it was reversed on appeal that in fact I had every right to hunt. . . ." At this point Judge Crutchfield broke in and began to question Romero about this court's decision in the case.[2]

1. Our disposition of the issue of the trial court's cross-examination of Romero makes it unnecessary for us to reach the additional question Romero raises regarding the admission of evidence of his 1983 conviction, and of his 1988 conviction for guiding without a license. We also find it unnecessary to address Romero's argument that inadmissible hearsay evidence was presented to the jury.

2. The court's questioning of Romero is set forth here in full:

ROMERO: . . . they charged me with a charge and it was reversed on appeal that in fact I had every right to hunt. . . .
COURT: Mr. Romero, I don't want to be placed in a position of reading that—that decision by the court of appeals, but I—I'm gonna

—that, anyway, this is probably something—if you contend—think about this for a few moments, you've been candid and you give your explanation, do you believe that that's in that opinion that they felt like that you had a right to do that?
ROMERO: I believe. . . .
COURT: Or did they reverse it because they said that I gave the wrong definition of guiding and that you should be retried and—and give the definition that they set out specifically?
ROMERO: Right, and under the narrow scope, Your Honor, my conduct was not illegal.
COURT: Okay, but, you know, but you—but do you—thinking about this, did you read

Romero moved for a mistrial based upon the judge's questions and comments. The motion was denied.

■ The standard for reviewing a trial court's participation in the examination of a witness is a question of first impression in Alaska. The majority of the jurisdictions that have enunciated a rule in cases of this type have held that a conviction will be reversed only where the judge's conduct has been so prejudicial as to deny the defendant a fair trial. *See United States v. Robinson,* 635 F.2d 981, 984 (2d Cir.1980), *cert. denied,* 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852 (1981); *United States v. Eldred,* 588 F.2d 746, 751 (9th Cir.1978); *State v. Hamilton,* 240 Kan. 539, 731 P.2d 863, 870 (1987); *People v. Pawelczak,* 125 Mich.App. 231, 336 N.W.2d 453, 457 (1983); *People v. Cooper,* 96 A.D.2d 866, 465 N.Y. S.2d 755, 756 (1983); *Commonwealth v. Hammer,* 508 Pa. 88, 494 A.2d 1054, 1060 (1985). We believe this standard strikes a fair balance between the trial judge's authority to supervise the trial and to ensure the orderly, clear, and efficient presentation of the evidence, and the defendant's right to trial by an impartial judge and jury. We must therefore determine whether Judge Crutchfield's conduct deprived Romero of a fair trial.

■ We find that the judge's cross-examination of Romero was prejudicial. A trial judge's cross-examination of the defendant will always carry a serious risk of the appearance of partiality. As the Supreme Court of Pennsylvania stated in *Hammer,* 494 A.2d at 1061 (citations omitted), "Trial judge participation in the examination of the testifying defendant is acutely objectionable where there is any suggestion that the judge has an opinion regarding the credibility of the defendant or the plausibility of the events related by the defendant."

Judge Crutchfield's characterization of Romero's testimony about his prior conviction as a "misrepresentation," and as "something that I believe was just simply not correct," could easily be taken by the

anything into their opinion that said that you had a right to do what you did?
ROMERO: I think it was....
COURT: Look, I'll give you a chance to read....
ROMERO: Right.
COURT: ... read it.
ROMERO: I have read it, Your Honor, and I have a copy of it. It's nine page or ten page by Judge Coats and it does speak to....
COURT: Now this—these are clarifying questions because I—I think I would be derelict in my responsibility if I allowed you to tell these jurors something that I believe was just simply not correct.
ROMERO: Uh-huh.
COURT: And....
ROMERO: It was—it was reversed on decision by Judge Coats. In was (sic) nine page decision.
COURT: And remanded for retrial with a....
ROMERO: With a narrow....
COURT: With their definition of what it meant to be an Assistant Guide.
ROMERO: Right.
COURT: In hunting.
ROMERO: Right.
COURT: Okay, but nothing in there that specifically ever hint to that that you had a right to do what you did under the factual situation in that case?
ROMERO: Well, Your Honor, it's going to take an explanation to explain that opinion and—and I don't have any problem with explaining that opinion and—and the facts surrounding that case, you know, I've read that opinion several times and I've talked....
COURT: I've read it several times in the last few days and I don't mind saying that and maybe we should just—we can provide it to the jurors, if that's necessary. Would you disagree with my statement that the last—short sentence on the last page said that this case—that your conviction was set aside and remanded, that you were—for retrial and—and that they—that the definition should be given as they instructed? Would you agree that's what it said?
ROMERO: That's what it says, yes.
COURT: Okay. And you think that your specific language, it said that you should have never been tried and you have a right to do what you did?
ROMERO: No.
COURT: Even—even some—not only—even an implication?
ROMERO: I believe that—that....
COURT: Is it in there? Is it in writing?
ROMERO: No, it's not—it's not in writing.
COURT: Mr. Romero, you—you brought up this situation and I apologize, but I, like I say, I'm not going to let some misrepresentation go to the jurors and if there's any question if you or the State would like to have those jurors furnished with a copy of that decision, I think it might be appropriate under the situation....

jury as a comment by the judge on Romero's credibility. Under these circumstances, we believe that there is a substantial risk that Judge Crutchfield's questioning of Romero could have influenced the jury in this case. We accordingly REVERSE Romero's conviction.